**UNION PRODUCING COMPANY,**
Plaintiff,

v.

**The FEDERAL POWER COMMIS-
SION et al., Defendants.**
**Civ. A. No. 4949–54.**

United States District Court,
District of Columbia.
Dec. 20, 1954.

Willard W. Gatchell, Gen. Counsel for Federal Power Commission, and William J. Grove, Asst. Gen. Counsel, Washington, D. C., for the motion.

Thomas Fletcher, Houston, Tex., and Ralph M. Carson, New York City, opposed.

HOLTZOFF, District Judge.

This is a suit by a producer of natural gas to enjoin the Federal Power Commission from attempting to enforce certain of its orders against the plaintiff, on the ground that the plaintiff claims not to be subject to the Natural Gas Act, and on the further ground that the orders are said to have been illegally issued. The matter came on for a hearing on the defendants' motion to dismiss the complaint on the ground that the action does not lie.

The Natural Gas Act, Act of June 21, 1938, 52 Stat. 821, 15 U.S.C.A. § 717, places under the regulation of the Federal Power Commission certain activities of natural gas companies. These concerns are defined as persons engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale, 15 U.S.C.A. § 717(a). In Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, the Supreme Court placed a broader construction on the definition of natural gas companies than had been attributed to that term by the Federal Power Commission for a number of years, and as a result of this decision a number of additional producers and gatherers of natural gas were brought within the scope of the statute. With a view to implementing the decision of the Supreme Court in the Phillips case, the Commission on July 16, 1954, issued Order No. 174 consisting largely of regulations governing the filing of rate schedules and applications for certificates of public convenience and necessity by those producers and gatherers of natural gas which are also natural gas companies.

Order No. 174 was superseded by Order No. 174(a) on August 6, 1954, the differences between the two being immaterial for the purposes of this case. The order was to become effective on December 1, 1954. Prior to that time, the plaintiff filed with the Commission a petition for a rehearing, in an effort to secure a determination that the orders did not apply to the plaintiff and that, in any event, the orders were illegally issued. No decision has been rendered on this petition and it apparently is still pending. On the eve of the effective date of the regulations this suit for an injunction was brought.

The plaintiff seeks to secure a ruling that it is not subject to the provisions of the Natural Gas Act. It claims that it is not within the terms of the statute, even under the broader definition enunciated in the Phillips case, contending that it is engaged solely in producing natural gas and selling it at the wellhead, but performs no gathering service

or transportation. It further prays for an adjudication that the regulations contained in Order No. 174(a) are invalid, in that the order was issued without a hearing, which the plaintiff claims was a prerequisite.

The defendants move to dismiss the complaint on the ground that it fails to state a claim on which relief may be granted, in that the plaintiff has mistaken its remedy, and further in that the action is premature. They assert that no justiciable controversy has as yet come into being. Each of these two grounds will be separately considered.

■ First, it is contended by counsel for the Commission that the only available form of judicial review is that provided by the Natural Gas Act, namely by a petition directly to the United States Court of Appeals, Natural Gas Act, Section 19(b), 15 U.S.C.A. § 717r (b). This provision, however, is limited to authorizing any party to a proceeding under the Act aggrieved by an order issued by the Commission in that proceeding, to obtain a review of the order in a United States Court of Appeals. Obviously this remedy is inapplicable in this instance, because the plaintiff has not been a party to any proceeding before the Federal Power Commission. Actually, there was no proceeding before it, since the orders were issued *ex parte* and without a hearing. In fact, counsel for the Commission candidly concede that if the plaintiff sought to invoke this remedy, they would then assert that the plaintiff has no standing to pursue it.

■ Counsel for the defendants further argue that the plaintiff has an administrative remedy under the Administrative Procedure Act, 5 U.S.C.A. § 1004(d), by applying to the Commission for a declaratory order. It appears from the allegations of the complaint, however, that the plaintiff has in fact filed with the Commission a petition for rehearing, which still remained undetermined when the regulations were about to go into effect, and this action was brought. An administrative agency may not obstruct an appeal to the courts by unreasonably delaying a decision on an application for administrative redress and then turning around and claiming that the party has not exhausted his administrative remedies.

■ The court is of the opinion that the present remedy is available to the plaintiff under the Administrative Procedure Act, which explicitly permits actions for injunctions to review the validity of agency action to be brought by any person adversely affected or aggrieved thereby, 5 U.S.C.A. §§ 1009(a) and (b). It has been expressly and specifically stated that an action for an injunction lies to determine the validity of a regulation promulgated by the Federal Power Commission, United Gas Pipe Line Co. v. Federal Power Commission, 86 U.S.App.D.C. 314, 318, 181 F.2d 796; Carolina Aluminum Co. v. Federal Power Commission, 4 Cir., 97 F.2d 435, 438. In the last cited case Judge Parker wrote as follows on this point:

"Or, if * * * the company apprehends an attempt on the part of the officers of the government to enforce the penalties of the act against it * * * and thinks such threatened action to be without legal basis, it may sue to enjoin them from taking such action and test its rights in that way."

■ The second and more difficult question is whether this action is premature. This problem, in turn, involves the query whether a justiciable controversy has arisen as between the plaintiff and the Commission. It is natural for any person who is in doubt whether certain regulatory statutes or regulations are applicable to his business, to wish to obtain an official and binding determination on this point, in order that he may govern his course of action accordingly. Such desires have been increasing because of the growing complexities of modern business and the

expansion in the scope and the intricacies of the regulatory activities of the Government. On the other hand, we must sedulously safeguard the tripartite division of Government. One of its basic principles is that the courts may not encroach on executive and legislative powers by giving advisory opinions and that judicial power may be invoked and exercised only for actual cases or controversies. In other words, there must be a justiciable controversy in order to justify the application of the judicial process.

The plaintiff points to the following circumstances in an effort to demonstrate that an actual justiciable controversy exists in this instance. The order of the Commission, to which the plaintiff objects, requires every natural gas company subject to the provisions of the Natural Gas Act to file its schedule of rates with the Commission. These rates must be those that the company was charging as of June 7, 1954. The order further provides that these rates may not be modified except by filing a change in the rates with the Commission 30 days in advance of the date on which the new rate is to take effect. In other words, the rates to be charged by all natural gas companies subject to the Act, were retroactively frozen as of June 7, 1954, and may not be changed except on 30 days' notice to the Commission. Moreover, the statute authorizes the Commission to reduce rates. Further the order requires every natural gas company subject to the Act to apply to the Commission for a certificate of public convenience and necessity as a condition of continuing in business. If the plaintiff subjects itself to the jurisdiction of the Commission by filing its rate schedule and submitting an application for a certificate of public convenience and necessity, its rates will become frozen as of June 7, 1954, irrespective of any contracts that it may have made with its customers. Moreover, by applying for and accepting a certificate of public convenience and

necessity, the plaintiff will become disabled from making any changes in the service that it renders, without the consent of the Commission. The plaintiff claims that it is subject to the jurisdiction of certain State regulatory bodies and may find itself in the position of having to obey conflicting directions. On the other hand, if the plaintiff ignores the recent order of the Commission, and declines to comply with it, and if it should later be decided that its position was erroneous and that the statute in fact applies to the plaintiff and that the order is valid, it will have incurred the risk of onerous penalties. A fine of $500 a day for wilful and knowing violations of any rules, regulations, or orders made or imposed by the Commission, is prescribed by the Act, 15 U.S.C.A. § 717t(b). Moreover, the plaintiff asserts that if it fails to comply, some of its customers may decline to continue dealing with it, in order to place themselves in a safe position and not incur the possible hazards consequent upon transacting business with a concern that may be violating the law. Thus the plaintiff, in effect, claims that it finds itself between Scylla and Charybdis. It contends that in view of these circumstances, it is not requesting merely an advisory opinion, but is confronted with a serious and immediate problem that gives rise to an actual justiciable controversy.

On the other hand the defendants point to the fact that they have as yet taken no steps to enforce the statute or the order as against the plaintiff and have made no threats to do so. They say, therefore, that no controversy in the eyes of the law has arisen and that consequently the action is premature. They, in effect, urge that the plaintiff must make its own decision and is not entitled to guidance by a judicial opinion at this juncture.

Counsel for the plaintiff in support of their position rely on Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563.

That case involved a regulation of the Federal Communications Commission to the effect that it would refuse to grant a license to any broadcasting station which entered into certain types of contracts with any broadcasting network organization. The Columbia Broadcasting System, contending that this regulation adversely affected its contractual relations with broadcasting stations and impaired its ability to carry on its business, brought suit to enjoin enforcement of the order. In a scholarly opinion rendered by Chief Justice Stone, the Supreme Court held that the action might be maintained. The learned Chief Justice said that the plaintiff's standing to bring its suit in equity was not affected by the fact that the regulations were not directed to the plaintiff and did not in terms compel action by it, or even impose penalties upon it because of its action or failure to act. The opinion further stated that it was enough that by setting the controlling standards for the action of the Commission, the regulations purported to operate to alter and affect adversely the plaintiff's contractual rights and business relations, 316 U.S. at page 422, 62 S.Ct. 1194..

Were it not for the circumstances about to be considered, this decision would constitute clear authority for maintaining the suit involved in the instant case. In the Columbia Broadcasting System case, however, Mr. Justice Frankfurter dissented, expressing the view that the action did not lie and that judicial review was premature at the stage at which it was requested. On the other hand several years later in Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784, involving a similar situation, there having been a change in the personnel of the Supreme Court in the meantime, Mr. Justice Frankfurter wrote for the majority, holding that an action for a declaratory judgment brought by a member bank of the Federal Reserve System against the Federal Reserve Board to secure an adjudication of invalidity of a condition attached to the admission of the plaintiff to the Federal Reserve System, could not be maintained, inasmuch as the Board had taken no steps or made any threats to enforce the condition. Although this conclusion seems manifestly contrary to that reached in the Columbia Broadcasting System case, in which Mr. Justice Frankfurter wrote the minority opinion, he does not refer to the Columbia Broadcasting System case in his majority opinion in the Eccles case. No attempt was made to overrule, distinguish, or reconcile the Columbia Broadcasting System case. And yet a strong and persuasive dissenting opinion in the Eccles case expressly calls attention to the earlier decision, stating:

"See Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, a case where prematurity was clearer than here." 333 U.S. at page 437, 68 S.Ct. at page 647.

This is not an isolated instance in recent years of this justice writing a dissenting opinion in an earlier case, then delivering the majority opinion in a later case to the opposite effect without referring to the earlier case, but completely ignoring it. A striking example occurred at this term of the Supreme Court. Thus, in 1952 in Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717, a sentence for contempt of court was imposed by a trial judge on counsel for misconduct during the trial, and was sustained in a prevailing opinion written by Mr. Justice Jackson. Mr. Justice Frankfurter dissented in a 19-page opinion accompanied by an appendix of 46 pages, on the ground that the trial judge who imposed the sentence should have referred the matter to another judge. Two and a half years later, in Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, involving exactly the same factual situation and the same question of law, Mr. Justice Jackson having died in the meantime, Mr. Jus-

tice Frankfurter wrote for the majority, arriving at a result precisely contrary to that which the majority of the Court had reached in the Sacher case, and holding that the trial judge should have assigned the contempt charge to another judge for disposition. Yet in his majority opinion in the Offutt case, Mr. Justice Frankfurter made no attempt to overrule, distinguish, or reconcile it, although a trenchant dissenting opinion in the Offutt case refers and points to the Sacher case. I am adverting to this circumstance as an indication that in recent years one member of the Supreme Court has attached no binding character to decisions of that tribunal rendered by a divided vote, if he himself were in the minority. The pertinency of this consideration to the case at bar is that there is an uncertainty as to what weight should be accorded to decisions of the Supreme Court reached by a divided vote. Are such decisions to be regarded as binding and controlling precedents? Does the principle of *stare decisis*, which is fundamental in our system of jurisprudence, apply to them? The Columbia Broadcasting System case and the Eccles case seem inconsistent with each other. Each was decided by a divided court and the majority opinion in the latter case does not even mention the earlier decision. The same is true of the Sacher and Offutt cases.

Counsel for the defendants rely on Public Service Commission v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. That decision seems, however, to be distinguishable. There the plaintiff sought a declaratory judgment in a Federal court to the effect that the plaintiff's business constituted interstate commerce. His purpose was to use the adjudication as a defense in proceedings instituted in a State court by the Public Service Commission of the State to enjoin certain activities of the plaintiff. The Supreme Court held that the action should not be entertained, as its aim was to establish an exemption from regulations in order to hold it in readiness for future use. The result was reached on the further ground that since Federal-State relations were involved, the Federal courts should not in the first instance interfere with a determination to be made by State administrative bodies or judicial tribunals, but should withhold any declaration until after the State proceedings were finished.

The latest decision presenting a situation parallel to that confronted in the instant case was rendered in Federal Communications Commission v. American Broadcasting Co., Inc., 347 U.S. 284, 74 S.Ct. 593, which involved a suit by a radio broadcasting company to enjoin the Federal Communications Commission from enforcing certain provisions in its rulings relating to the broadcasting of so-called "give away" programs. The question was whether these regulations correctly interpreted certain provisions of the Criminal Code, 18 U.S.C.A. § 1304. The action was brought after the promulgation of the rules but before the Commission took any steps or made any threats to enforce them. The Supreme Court passed on the question of substantive law and in a unanimous opinion held the regulations invalid. The preliminary question whether such an action might be maintained was, however, not discussed. An examination of the briefs indicates that no such objection was raised by Government counsel. This circumstance, no doubt, detracts from the weight of this case as an authority on the procedural issue. On the other hand, the question whether an action presents a justiciable controversy is one that the court may raise *sua sponte* in order that the judicial process may not be abused. Consequently the assumption of jurisdiction in the American Broadcasting Co. case may be construed as constituting at least some indication on the part of the Supreme Court that an action may be maintained under the cir-

**94**

cumstances similar to those in the case at bar. It is possible, indeed, that the point did not occur to the Court, since the matter was not brought to its attention by counsel. In any event, tacit and negative though it be, it is the latest expression of the Supreme Court on this point.

In the light of the uncertainties that have been discussed, the safe and sound practice for this court to follow is to revert to basic principles and to established landmarks in the law. The leading authority on the point under discussion is Ex parte Young, 209 U.S. 123, 163 et seq., 28 S.Ct. 441, 52 L.Ed. 714. This case involved actions brought by stockholders of certain railroad companies against the companies themselves and against the regulatory authorities of a State, to enjoin the enforcement of certain rates and tariffs prescribed by the State. One of the grounds for invoking the equity jurisdiction of the court was that the penalties prescribed for violations of the orders were so drastic that no railroad company could afford to run the risk of disobeying them and then testing their validity in some suit that might be later brought against the company for their enforcement. The Supreme Court in an exhaustive and scholarly opinion held that an action in equity might be maintained.

As heretofore indicated this court recognizes and must face the fact that there is an uncertainty in the recent decisions on the question of the right to maintain such an action as the present suit. The court will resolve that doubt on the basis of what seems to be the correct principle and the dictates of substantial justice in favor of the plaintiff and feels that its conclusion is fully and amply supported by the leading case of Ex parte Young, supra. The court concludes, therefore, that this action may be maintained, that the complaint is sufficient and that, therefore, the motion to dismiss should be denied.

Motion denied.