**UNITED STATES of America, Appellant,**

v.

**Patrick S. CUNAN, Defendant, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**Richard J. DECATO, Jr., et al., Defendants, Appellees.**

Nos. 96–1235, 97–1470.

United States Court of Appeals, First Circuit.

Heard May 5, 1998.

Decided Sept. 17, 1998.

David S. Mackey, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellant.

Kevin E. Sharkey for appellees.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

This case poses an interesting problem of *res judicata:* does a dismissal with prejudice of a civil forfeiture action bar the subsequent criminal forfeiture of the same properties by the same sovereign? The district court ruled that a civil dismissal has preclusive effect, and it thereby rebuffed the government's attempt to confiscate nine properties otherwise forfeitable because of their connection to drug trafficking and money laundering. *See* 21 U.S.C. § 853; 18 U.S.C. § 982. On appeal, the government claims that the district court erroneously invoked the doctrine of *res judicata.* We affirm.

## I. *Background*

The drug trafficking and money laundering activities that underlay this case have no direct significance to the appeal, and we therefore do not review the facts surrounding them in any detail.[1] It suffices to say that a lengthy and lucrative drug business operated by Richard DeCato earned him substantial cash resources that he used to purchase real estate and other items that he usually put under the name of appellee Patrick Cunan or a Cunan-controlled company. Cunan also was involved as owner of a business in New Hampshire through which DeCato allegedly laundered drug revenues.

In late 1990 and early 1991, the United States filed three civil actions seeking forfeiture of Cunan's business, State Scale Co.,

and eight parcels of real estate located in Maine.[2] The government's complaints alleged that the Maine real estate had been purchased with proceeds from DeCato's illegal drug trafficking and that State Scale had been used to facilitate drug trafficking and money laundering, rendering the properties forfeitable under 21 U.S.C. § 881 and 18 U.S.C. § 981, respectively. Cunan, the named owner of the properties, filed claims for all of them.[3]

The civil actions were pending when, in February 1993, DeCato, Cunan, and Cunan's wife, Patricia, were indicted by a federal grand jury sitting in Boston on charges of violating federal drug laws, conspiracy and money laundering. Count 5 of the indictment, against Patrick Cunan only, sought to forfeit his interest in State Scale pursuant to 18 U.S.C. § 982, which provides for criminal forfeiture when property has been linked to money laundering. Count 37 of the indictment, against DeCato only, sought forfeiture of his interest in properties constituting proceeds, or involved in the facilitation, of illegal drug trafficking. The eight Maine properties at issue in the Maine civil proceedings were included.

Six days after the return of the criminal indictment, the United States filed motions to dismiss the two Maine civil actions. The government explained its action as follows:

> The principal reason that Plaintiff seeks the dismissal is judicial economy; that is, the property which is the subject of this action is the same as that of the criminal action now pending in Massachusetts. Regardless of the outcome of this civil action, the criminal indictment in Massachusetts will go forward to trial on the merits. Continued litigation in this action is therefore a waste of the Court's time.

1. Criminal convictions arising from those transactions are the subject of separate appeals. *See United States v. Cunan,* 152 F.3d 29 (1st Cir. 1998).

2. The first complaint was filed in September 1990 in the United States District Court for the District of New Hampshire, seeking forfeiture of State Scale Co. Two complaints then were filed in Maine, one in Bangor in October 1990 ("the

Northern Maine action") and one in Portland in March 1991 ("the Southern Maine action"), each seeking forfeiture of four properties.

3. Property will not be forfeited under these provisions if an individual claimant can establish ownership and that the property was used unlawfully without his or her knowledge of consent. *See* 21 U.S.C. § 881(a)(6) (drug-related); 18 U.S.C. § 981(a)(2).

The United States and Cunan, the only claimant in the two Maine proceedings, agreed to a dismissal with prejudice in the northern Maine case. *See* Fed.R.Civ.P. 41(a)(1).

In the southern Maine proceeding, Cunan sought an opportunity to move for costs and fees before the action was dismissed. The court denied his request and dismissed the action without prejudice, finding the dismissal "to be in the best interests of justice and in accordance with consideration of judicial economy." *See* Fed.R.Civ.P. 41(a)(2). Cunan thereafter renewed his motion for an opportunity to request costs and fees and also asked that the dismissal be changed to "with prejudice." The government opposed the request for leave to move for costs and fees, but took no position on whether the dismissal should be granted with or without prejudice.[4] In April 1993, the court amended its previous order to make the dismissal "with prejudice," but declined to disturb its earlier ruling against costs and fees.

In November 1993, the Cunans moved in the Massachusetts criminal case to dismiss the eight Maine properties from Count 37, arguing that the voluntary dismissals with prejudice in the civil proceedings barred the United States, on the ground of *res judicata,* from attempting to forfeit those same assets in the criminal case. The Massachusetts district court granted their request, but this court later vacated its order as premature. *See United States v. Real Property in Waterboro,* 64 F.3d 752, 756 (1st Cir.1995). We held that the Cunans were obliged to wait until an order of forfeiture was entered before advancing their claim preclusion argument.

Meanwhile, the New Hampshire civil forfeiture case involving Cunan's business had taken a somewhat different course. In May 1992, the New Hampshire district court stayed the case "pending the resolution of criminal proceedings, if any, against claimant." In December 1994, the district court issued an order stating that it would not continue the stay beyond April 1995. The United States responded by filing a motion to dismiss the case *without* prejudice. By that

time, the Massachusetts court in the criminal case had ruled that *res judicata* principles barred the criminal forfeiture of the Maine properties, and so the United States advised the New Hampshire court that "a dismissal of this case with prejudice will be held by the [Massachusetts] court to be *res judicata* ..., preventing forfeiture of State Scale, Inc. in that case." The New Hampshire court denied the motion without explanation and set the civil case for trial.

This created two problems for the government. First, the criminal trial was scheduled to begin at virtually the same time, and prosecutors thus faced two trials involving the same actors and actions in different jurisdictions. Second, Cunan filed notices in the New Hampshire civil case seeking to depose government witnesses in the Massachusetts criminal case, potentially exposing key criminal witnesses to questioning outside the criminal process. To eliminate these conflicts, the government moved to dismiss the New Hampshire case with prejudice, asserting that

> [i]nasmuch as the property which the United States has sought to forfeit in the instant civil case is also sought to be forfeited in the criminal prosecution, Plaintiff has determined that continuation of the instant civil case would expend unnecessary resources of the prosecution and of this Court.

The district court granted the motion on September 5, 1995, stating: "I take no position as to the reasons for the dismissal with prejudice or the merits of any claim for attorneys' fees that may be made at some future time."

All three civil cases having been dismissed with prejudice, the scene shifted fully to the criminal proceedings in Massachusetts. DeCato pleaded guilty to various counts in the indictment, and admitted that the Maine properties listed in Count 37 were purchased with proceeds linked to his unlawful conduct and thus were forfeitable. The district court entered a forfeiture order against the eight parcels, and Cunan filed a now timely peti-

---

4. The government, in fact, had moved for a dis-     missal "with prejudice."

tion asserting a superior interest based on the Maine dismissals.

Similarly, following dismissal of the New Hampshire civil case, Cunan filed a motion to dismiss the entire criminal indictment in Massachusetts on the grounds of double jeopardy and *res judicata*/collateral estoppel. The motion was denied, the trial went forward, and the Cunans were found guilty on all counts. The ·jury also returned a special verdict on Count 5 forfeiting Cunan's interest in State Scale. Cunan then renewed his motion to dismiss Count 5, and this time the district court granted it, ruling in January 1996 that the final judgment in the New Hampshire case barred the criminal forfeiture. In February 1997, the district court again accepted Cunan's *res judicata* argument regarding the eight Maine properties and granted his petition claiming priority to the parcels.

When the dust settled, then, the government was left with successful prosecutions— DeCato having pleaded guilty and the Cunans having been convicted by a jury—and confirmation that the properties at issue in this case were forfeitable—through DeCato's admissions regarding the Maine parcels and the jury's finding on State Scale[5]—but a ruling from the Massachusetts District Court that negated the criminal forfeitures. On appeal, the government urges us to find that the district court erred in giving preclusive effect to the civil forfeiture proceedings.

## II. *Discussion*

We begin with a few basic principles. First, the federal doctrine of *res judicata*, or claim preclusion, bars a subsequent action whenever three criteria are met: (1) there is a final judgment on the merits in an earlier action; (2) "sufficient identity" exists between the parties in the earlier and later suits, and (3) "sufficient identity" exists between the causes of action in the two suits. *See Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996); *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1165 (1st Cir.1991).

Second, a voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criterion. *See Lawlor v. Nation Screen Serv. Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (judgment dismissing "the previous suit 'with prejudice' bars a later suit on the same cause of action"); *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir.1995) ("A judgment that is entered with prejudice ... by stipulated dismissal ... bars a second suit on the same claim or cause of action."); *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir.1991) ("A voluntary dismissal with prejudice under Fed.R.Civ.P. 41(a)(2) is a complete adjudication on the merits of the dismissed claim."); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2376 at 319–320 (2d ed. 1995) ("Dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata....").

Third, in defining a "cause of action" for purposes of *res judicata*, the First Circuit adheres to a broad "transactional" approach that embraces " 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985) (quoting *Restatement (Second) of Judgments* § 24 (1982)); *see also Porn*, 93 F.3d at 34.

Because it is undisputed that the Maine and New Hampshire civil proceedings at issue here involved the same parties and ended with final judgments, the applicability of *res judicata* to the circumstances of this case turns on the third criterion noted above: whether the civil and criminal forfeiture proceedings involved the same cause of action. The district court concluded that "the causes of action are identical because they are aimed at the forfeiture of the same properties." The government contends that that determination is overly simplistic and ignores significant differences between the two proceedings that render *res judicata* inapplicable. We

---

**5.** The Cunans' convictions have been affirmed in a separate opinion of this panel, thus confirming the jury's finding.

review *de novo* the district court's ruling. *See Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir.1994).

Probably the most compelling of the government's arguments is that, because of their very different natures, a prosecution and a claim for a civil remedy are distinct causes of action that may be pursued independently.[6] As a general matter, this assertion seems supported by precedent and logic. Ample authority is available for the proposition that "civil and criminal proceedings, although based upon the same facts, do not involve the same cause of action, [and] a judgment in one proceeding is not *res judicata* ... in the other proceeding." 1B *Moore's Federal Practice* ¶ 0.418 [1] (2d ed.1993); *see also Restatement (Second) of Judgments* § 85 (comment a) ("A prosecution and a claim for a civil remedy are regarded as separate causes of action that may be independently pursued...."); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4474, at 748 (1981) ("Wright & Miller") ("Claim preclusion does not extend from criminal prosecutions to civil actions."); *United States v. Parcels of Real Property*, 913 F.2d 1, 4 (1st Cir.1990) (rejecting defendant's argument that his state narcotics convictions should have no collateral estoppel effect, in part because they were on appeal, because, *inter alia*, civil forfeiture proceeding is independent of related criminal prosecution); *United States v. Mumford*, 630 F.2d 1023, 1027 (4th Cir.1980) (*res judicata* inapplicable between SEC proceeding for injunctive relief and criminal convictions).

The logic behind the dichotomy is easy to understand. Because criminal and civil remedies cannot be pursued in the same proceeding, it would seem unjust for the failure to seek both at the same time to trigger *res judicata* consequences. *See* 18 *Charles Alan Wright, Arthur R. Miller & Edward H. Cooper*, § 4407, at 51 ("[C]laim preclusion cannot extend beyond the limits of an action that can be brought before a single court."); *id.* at § 4474, at 748 ("Our traditional division between civil and criminal procedure does not contemplate any opportunity for joining any civil claim with the criminal prosecution."); *Massachusetts School of Law at Andover v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir.1998) ("[R]es judicata will not attach if the claim asserted in the second suit could not have been asserted in the first."); *Kale*, 924 F.2d at 1167–68 (well settled exception to transactional test where plaintiff unable to seek certain remedy or form of relief in the first action because of restrictions on the court's authority); *Pasterczyk v. Fair*, 819 F.2d 12, 14 (1st Cir.1987). Thus, while the transactional test may be broad enough to cover both a civil action and a criminal prosecution arising from the same series of events, the barrier imposed by jurisdiction appears to require a loosening of *res judicata*'s restrictions.

The support for segregating civil and criminal proceedings is inapt, however, in the specific circumstances present here. None of the cases and treatises noted above dealt with a situation in which the civil and criminal actions sought precisely the same outcome, the forfeiture of the identical pieces of property. The distinction ordinarily is drawn between a prosecution for criminal conduct, punishable by incarceration, and a civil action that seeks to impose some other remedy or sanction. Here, although the structural criminal/civil difference remains, the substantive issue and the government's

---

**6.** The government also makes the argument that criminal forfeiture is not a "cause of action" but merely a "sentence" imposed upon a criminal defendant after conviction, with the consequence that there can be no preclusion of such a "claim" stemming from dismissal of a civil forfeiture action. We think this argument fails to give due weight to the procedure associated with criminal forfeiture. Although criminal forfeiture is a form of punishment, *see Libretti v. United States*, 516 U.S. 29, 38–40, 116 S.Ct. 356, 363, 133 L.Ed.2d 271 (1995), it occurs only after a finding, usually by the jury, on a separate portion of a count charged against the defendant in the indictment.

*See* Fed.R.Crim.P. 7(c)(2) ("No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture."); Fed.R.Crim.P. 31(e) ("If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any."); *United States v. Rogers*, 102 F.3d 641, 647 (1st Cir.1996); *United States v. Bieri*, 21 F.3d 819, 822 (8th Cir.1994). If this technically is not a cause of action, we think it is an equivalent for *res judicata* purposes.

objective are the same in both settings. Indeed, the government's basis for dismissing the civil proceedings was that they were duplicative of the criminal action.

Whatever rationale exists for departing from the standard definition of "cause of action" to classify criminal and civil claims separately certainly dissipates in these circumstances, where allowing the criminal forfeiture unquestionably would give the government a second bite at the very same apple. In this setting, it seems illogical to abrogate the *res judicata* doctrine based on the fact that the civil and criminal proceedings could not take place in the same forum; by definition, these are alternative paths to the same goal, and if one proceeding leads to a final judgment that substantively resolves the property dispute, revisiting the question in the other forum would present a classic case of repetitive litigation. *Cf. Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 683–84 (10th Cir.1991) (*in personam* action for attorney's fees and separate action for portion of a fees fund are on the same claim for *res judicata* purposes).

In addition to the distinction based on the available forum, the government argues that criminal and civil forfeitures should be treated as separate causes of action because the procedures incident to each are dissimilar. It notes that conviction is a prerequisite for criminal forfeiture but not civil forfeiture, that each procedure has differing burdens of proof, and that, unlike in the civil setting, if the property sought in a criminal action has been disposed of, the court can order forfeiture of any other property of the defendant up to the value of the missing forfeitable property. *See* 21 U.S.C. § 853(p).

Claim preclusion does not require an exact match, however. *See Massachusetts School of Law at Andover*, 142 F.3d at 38 ("To bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action.") The relevant test simply asks whether the same parties pursued a remedy that arose from the same "transaction" in an earlier proceeding that ended with a final judgment. Minor variations in the proceedings—for example, the difference between an initial finding of forfeitability by a preponderance of the evidence in the criminal case and the probable cause finding in the civil case—are insufficient to establish separate causes of action. Indeed, *res judicata* is intended to foreclose parties from multiple attempts to obtain relief for the same harm through the use of new legal theories. *See Diversified Foods, Inc. v. First National Bank of Boston*, 985 F.2d 27, 30 (1st Cir.1993); *Restatement (Second) of Judgments* § 24, comment c (same claim involved even where "several legal theories . . . would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief"). Here, the similarity in the burdens looms much larger than any differences; in both proceedings, a claimant must establish priority over the property by a preponderance of the evidence.[7]

Some differences in burden can, of course, be extremely important in analyzing the *res judicata* consequences of duplicative civil and criminal proceedings. If a criminal judgment ends without a conviction, and thus without a forfeiture of property, the government may pursue the property through the civil proceeding. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). This

---

7. In a criminal forfeiture, which is an *in personam* action against the defendant, the government must show by a preponderance of the evidence that the defendant's property is forfeitable. *United States v. Rogers*, 102 F.3d 641, 647–48 (1st Cir.1996). Then, at an ancillary hearing, claimants other than the defendant have an opportunity to prove by a preponderance of the evidence that they have an interest in the property superior to that of the defendant, or that they were *bona fide* purchasers for value without reason to know that the property was forfeitable. 21 U.S.C. § 853(n)(6).

In a civil forfeiture case, which is an *in rem* action against the property, the government must first establish probable cause to believe that the defendant property is forfeitable. *United States v. One Lot of U.S. Currency ($36,364)*, 103 F.3d 1048, 1053–54 (1st Cir.1997). This shifts the burden to the claimant to show by a preponderance of the evidence that the claimant owns the property and that it was used without the claimant's knowledge or consent. *United States v. One Parcel of Real Property*, 942 F.2d 74, 79 (1st Cir.1991).

is permissible because a jury's determination that the charged crime has not been proved beyond a reasonable doubt does not foreclose the government from pursuing a civil forfeiture based on the lower preponderance of the evidence standard. *Id.* at 361–62, 104 S.Ct. 1099; *United States v. Dunn,* 802 F.2d 646, 647–48 (2d Cir.1986). A quite different dynamic is at play when the civil proceeding has been resolved first, and the final judgment establishes that the government has not met the less onerous burden.

The government offers several reasons why *res judicata* should not be applied to this case even if the criminal and civil proceedings are deemed to constitute the same cause of action. It maintains that application of *res judicata* here would be inconsistent with the doctrine's underlying goals of conserving judicial resources and avoiding multiple lawsuits, conflict with the district courts' intentions in dismissing the civil forfeiture actions, unfairly result in a windfall for the defendants, and frustrate Congress's intentions in providing for forfeiture. We address each in turn.

The purpose of *res judicata* is to " 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.,* 48 F.3d 576, 583 (1st Cir.1995) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The government says that it requested dismissal of the civil action because of a concern about judicial economy and the logistical difficulties of pursuing the civil and criminal proceedings in different

locations at the same time. The government asserts that, if the criminal dismissals are not reversed, it will be required in the future to pursue multiple proceedings in multiple forums to avoid the consequences of *res judicata.*

We are unpersuaded that the interests underlying *res judicata* are best served in this case by re-activating the criminal forfeiture. The United States Code specifically contemplates the possibility of duplicative forfeiture proceedings and provides a mechanism for a stay of the civil proceedings pending resolution of the criminal case. *See* 21 U.S.C. § 881(i) (stay of civil forfeiture proceedings involving drug trafficking).[8] *See also* 18 U.S.C. § 981(g) (stay of civil forfeiture proceedings involving money laundering). This scheme appears to provide the government with the best of both the civil and criminal structures: from the time of the civil filing, the property sought by the government is restrained, and if the subsequent criminal proceeding is unsuccessful, the government can resume its efforts to obtain the property civilly. If the criminal forfeiture succeeds, the civil case can be dismissed.

The New Hampshire district court did, in fact, stay the State Scale forfeiture proceeding for three years, from May 1992 to April 1995. When the court announced that it would lift the stay and set a trial date, the government made no request to extend the stay and instead moved for a dismissal, first with prejudice and later without. *See supra* at 112–113.[9] In Maine, Cunan had sought a stay relatively early in the proceedings, but the government opposed the motion and the district court denied it. There, too, a stay,

---

**8.** The provision states in its entirety:

The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter, or a violation of State or local law that could have been charged under this subchapter or subchapter II of this chapter which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.

**9.** At oral argument, the government's attorney stated that he did not know why no request was made, but speculated that it was deemed futile in light of the court's lifting of the stay and setting a trial date. The government knew at that point that the Massachusetts court would treat a final

judgment on the civil forfeiture as *res judicata,* however, and a brief stay on that basis until after the about-to-occur criminal trial would seem to satisfy the statutory "good cause" for a stay. *See* 21 U.S.C. § 881(i); *United States v. Premises and Real Property at 297 Hawley Street,* 727 F.Supp. 90 (W.D.N.Y.1990) (government's need to protect criminal case from defendant's potentially broad civil discovery constituted "good cause" to stay civil forfeiture action until disposition of related criminal proceeding).

We recognize that the government did make efforts to avoid competition between the proceedings before moving to dismiss with prejudice, first with a motion to dismiss without prejudice and then by seeking to amend the civil complaint to eliminate the money-laundering ba-

rather than dismissal, would have been a viable option once the criminal indictment was filed.

It seems to us, based on this history, that the government had available a possible method for avoiding duplicative proceedings, and the waste of its own and judicial resources, but chose not to pursue it.[10] Cunan suggests that, in the Maine case, the original opposition to a stay was a deliberate tactical decision that enabled the government to move forward with civil discovery for three years, at great expense to him. Whatever the motivation, we are disinclined to grant the government a second opportunity to litigate the same question, bypassing the normal operation of *res judicata*, when it did not take advantage of an available mechanism to avoid this very problem.[11] It is the government's position, not Cunan's, that seems at odds with the principles of claim preclusion.

As for the intentions of the Maine and New Hampshire district courts, it appears that at least the Maine court contemplated that the criminal proceedings would go forward when the civil proceedings were dismissed.[12] Both Maine and New Hampshire courts, however, granted dismissals with prejudice, presumably aware that such judgments are final for purposes of *res judicata*.[13] In the New Hampshire case, in fact, the government initially requested a dismissal without prejudice explicitly because of the *res judicata* problem, but the court denied the motion. Rather than appeal, the government then sought a dismissal with prejudice. In granting it, as noted earlier, *see supra* at 113, the district court observed that it took "no position as to the reasons for the dismissal with prejudice." That court might have felt that the government was free to tackle the *res judicata* problem in Massachusetts, if it so wished.[14] Moreover, even if either of the dismissing courts was operating on the assumption that *res judicata* would not bar the criminal forfeiture, there is no dispute that they intended final judgments on the civil proceedings. Any mistake by them about the *res judicata* effect of such judgments is not, we think, a basis for negating the doctrine.

---

sis for the forfeiture (State Scale was subject to forfeiture on that ground in the criminal case). Its motions were denied. We remain puzzled, however, by the government's failure to request an extension of the stay or, alternatively, to appeal the denial of its motion to dismiss without prejudice, which could have avoided the current predicament.

**10.** That the government could have obtained an extension on the stay is not a certainty, of course. The district court would need to consider factors other than those affecting the government, including the length of time the property already had been restrained and the impact of that restriction on Cunan. On balance, however, a continued stay pending the upcoming criminal trial would seem to have been justified. And if the district court refused one unreasonably, the government would have a strong basis for an appeal.

**11.** The stay provision was added to the statutory scheme in 1984 to ensure that the government would not be "compelled in the context of the civil forfeiture action to disclose prematurely aspects of its criminal case." S.Rep. No. 225, 9th Cong., 2d Sess. Sec. I, *reprinted in* 1984 U.S.Code Cong. & Ad. News at 3182, 3398–99. *See United States v. Premises and Real Property at 297 Hawley Street*, 727 F.Supp. 90, 91 (W.D.N.Y. 1990) (citing *United States v. $8,850*, 461 U.S. 555, 567, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983))("A prior civil suit might serve to estop later criminal proceedings and may provide im-

proper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution.")

**12.** As noted *supra* at 112, in dismissing the Southern Maine action, the district court entered an order finding "such dismissal to be in the best interests of justice and in accordance with consideration of judicial economy."

**13.** The Southern Maine action, as noted earlier, originally was dismissed without prejudice, but changed at Cunan's request.

**14.** The New Hampshire court later denied Cunan's application for an award of attorney's fees, stating:

> [T]he government was fully justified in pursuing the forfeiture petition based upon the jury's verdict on the related criminal forfeiture count. The applicant is not entitled to fees simply because the government chose to proceed with the related criminal forfeiture count rather than proceeding with its claim in this case.

In our estimation, this statement simply reflects the court's view that, regardless of the government's pursuit of dismissal once the criminal indictment was filed, the original filing of the civil forfeiture petition was appropriate factually; the jury's verdict that the property should be forfeited confirmed that view.

Nor is there a persuasive argument that fairness requires a reprieve from the normal operation of *res judicata*. The government argues that barring the criminal forfeiture results in an unjust windfall for the Cunans, and it points to our statement that this court has "recognized the existence of judicial power to make an 'occasional exception' to claim preclusion in order 'to prevent undue hardship.'" *See Kale*, 924 F.2d at 1168 (quoting *Rose v. Town of Harwich*, 778 F.2d 77, 82 (1st Cir.1985)). We are hard pressed to characterize this as a situation of "undue hardship," and the Supreme Court has discouraged if not forbidden resort to equity as a way of avoiding *res judicata*:

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*".... We have stressed that "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...."

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citations omitted). *See also* 18 *Moore's Federal Practice* § 131.12[3] (3d ed. 1998) ("The doctrine of claim preclusion is not concerned with whether ... considerations of fairness should merit a different result in the subsequent litigation.... The need for final resolution of litigated claims often takes precedence over concerns of fairness or justice in individual cases."); *id.* at § 131.24[6] ("The Supreme Court's decision in *Federated Dep't Stores, Inc. v. Moitie* dooms to failure any attempt to avoid application of the claim preclusion doctrine on the

grounds that such application in a particular case is unfair, unjust, or unduly harsh."). Here, where the government had the opportunity to seek a stay of the civil proceedings pending completion of the prosecution, we see no equitable justification for departing from basic preclusion principles.[15]

Finally, we reject the notion that the district court's decision barring this forfeiture undermines Congress's effort to deter drug trafficking through an attack on "the economic aspects of these crimes." *See* S.Rep. No. 225, 98th Cong., 2d Sess. Sec. I, *reprinted in* U.S.Code Cong. & Admin. News 3182, 3184. While the outcome of this case may be termed a windfall for DeCato and Cunan, it does not put at risk either the mechanism of forfeiture or the choice available to the government to proceed through a civil action, a criminal action, or both. The government simply cannot evade the normal operation of *res judicata* when it litigates a civil forfeiture case to final judgment. The flexibility built into the forfeiture scheme, entitling the government to a stay "for good cause shown," protects both the government's right to confiscate property used for unlawful purposes and claimants' rights to be free from the "cost and vexation of multiple lawsuits," *Apparel Art Int'l*, 48 F.3d at 583.

Two circuits have indicated agreement, albeit in dicta, with the view that *res judicata* applies to this factual scenario. The Eighth Circuit, in *United States v. Maull*, 855 F.2d 514 (8th Cir.1988), considered the dismissal of a civil forfeiture action by a Colorado district court. The notation did not indicate whether the dismissal was with or without prejudice. The panel majority assumed that the dismissal was without prejudice, thus not a final judgment on the merits, "and that res judicata did not bar the criminal forfeiture proceeding." *Id.* at 517. Implicit in its ruling is the conclusion that if the civil forfeiture dismissal *had* been with prejudice, *res judicata* would have been applicable. Judge Richard Arnold, in dissent, was more explicit.

---

**15.** The government's reliance on *United States v. American Heart Research Foundation, Inc.*, 996 F.2d 7, 11 (1st Cir.1993), is unavailing. In that case, a panel of this court held that, "for reasons peculiar to the civil injunction statute, a successful action brought under that statute does not preclude a later separate claim by the government for monetary relief." The court concluded

that the statutory goal of putting a "speedy end" to fraud schemes would be handicapped if the government was required to assert civil damage claims when it requested injunctive relief. No equivalent interest is harmed by applying *res judicata* in this setting, where the stay provision, properly used, can avoid timing problems.

He disagreed that the original judgment was without prejudice, and argued that "[t]his adjudication must operate as a bar to the later assertion of the same claim." *Id.* He stated:

> Here, although the form of the later action was different, criminal as opposed to civil, the same property was involved, the same claimants, and the same underlying purpose: to deprive [the defendant] of the fruits of his crime.

*Id.*

A case factually related to *Maull* reached the Tenth Circuit three years later. In *United States v. Lots 43 Through 46*, 935 F.2d 1134, 1137–38 (10th Cir.1991), involving the same criminal forfeiture at issue in *Maull*, the court ruled that *res judicata* principles required it to accept earlier decisions on the *res judicata* effect of the civil forfeiture proceeding. The court, however, expressed its agreement with Judge Arnold's dissent:

> If we were writing on a clean slate we would, in fact, be inclined to views about the case consistent with the persuasive dissent of Judge Arnold.... [T]he Colorado District Court's dismissal (which we agree with Judge Arnold should be viewed as with prejudice) of the civil forfeiture proceeding in Colorado should have been held to bar the subsequent criminal forfeiture proceeding in Missouri.

935 F.2d at 1137–38.

■ For the foregoing reasons, we, too, conclude that *res judicata* bars a criminal forfeiture following dismissal with prejudice of a prior civil forfeiture proceeding involving the same property. We therefore affirm the judgment of the district court.

*Affirmed.*