GORTON, District Judge.
This dispute arises from the government's claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover costs incurred by the United States Navy ("the Navy") in response to the release of chlorinated solvents from the Naval Weapons Industrial Reserve Plant ("NWIRP" or "the facility") in Bedford, Massachusetts.
In or about 1989, while Raytheon Company ("Raytheon" or "defendant") operated NWIRP as the Navy's contractor, the Navy identified chlorinated solvents in the groundwater under the facility. Several years later, in or about 1995, the Navy began to build a pump-and-treat system to stop the chlorinated solvent plume from migrating beyond the facility. That pump-and-treat system became operational in or about 1997. In 2010, the Navy issued a record of decision ("ROD") for NWIRP, which selected a final remedial action to address the solvent plume. The Navy now alleges under 42 U.S.C. § 9607(a)(2) that defendant is liable for unreimbursed response costs incurred and to be incurred by the Navy, including enforcement costs, stemming from the contamination at NWIRP that began around 1989. The Navy also seeks declaratory judgment under 42 U.S.C. §§ 9613(g)(2) and 9607(a), respectively. Pending before the Court is the defendant's motion to dismiss the complaint.
I. Background
In or about 1989, while Raytheon operated NWIRP as the Navy's contractor, the Navy identified chlorinated solvents in the groundwater under its facility. Following an identified leak of such solvents, the Town of Bedford ("the Town") filed suit against the Navy, Raytheon and others, alleging that the NWIRP facility contaminated the Town's water wells (herein referred to as the "Bedford Litigation"). In March, 1993, another session of this Court entered a judgment dismissing with prejudice the Bedford Litigation, including the Navy's cross claims against then co-defendant Raytheon. That dismissal was based upon six separate settlement agreements, including one overarching settlement agreement ("the Global Agreement"). The Court also retained jurisdiction with respect to the provisions of 1) the Agreement Between the Town of Bedford and the Department of the Navy Regarding Site Y ("Site Y Agreement"), 2) the Settlement Agreement Between the Department of the Navy and the Department of the Air Force and Raytheon ("Navy-Raytheon Agreement") and 3) Massport's cross claims against the Air Force.
In 1999, after the pump-and-treat system built by the Navy was operable, the Navy negotiated a separate agreement, the Federal Facility Agreement ("the FFA"), with the United States Environmental Protection Agency ("the EPA").
*523 Ten years later, in 2010, the Navy issued a record of decision ("ROD") for NWIRP which established a remedial action to address the solvent plume.
II. Analysis
A. Standard of Review
To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). In "narrow exceptions" courts may take into consideration documents whose authenticity is not disputed by the parties, official public records, documents central to the plaintiff's claim or documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).
Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F.Supp.2d at 208.
Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.
B. Res judicata
In appropriate cases an "affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim". In re Colonial Mortg. Bankers Corp. et. al v. Lopez-Stubbe et. al, 324 F.3d 12, 16 (1st Cir. 2003). "The affirmative defense of res judicata is no exception". Id. Dismissal under res judicata, however, can only occur where the facts that establish the defense are conclusive and definitively ascertainable from 1) the allegations of the complaint, 2) the documents (if any) incorporated therein, 3) matters of public record and 4) other matters of which the court may take judicial notice. Id. at 16.
Furthermore, to establish the affirmative defense of res judicata, defendants must show that 1) "there is a final judgment on the merits in an earlier action", 2) "sufficient identity" exists between the parties in the earlier and later suits and 3) "sufficient identity" exists between the causes of actions in the two suits. United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998).
The parties do not dispute the authenticity of the public documents in question, namely the order of dismissal of all claims issued by another session of this Court in the Bedford Litigation, the corresponding settlement agreements and the Navy's agency records on the alleged removal and remedial actions at the facility. Because those documents are of public record and their authenticity is not in dispute, this Court takes judicial notice thereof and *524 will consider them in light of defendant's motion to dismiss.
1. Final judgment on the merits
For the purposes of res judicata, a voluntary dismissal with prejudice is a final judgment on the merits. Cunan, 156 F.3d at 114. Res judicata also applies even if the dismissal is made in conjunction with a settlement. Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995). In the Bedford Litigation, the Navy filed cross claims against Raytheon, seeking indemnification for costs, liability and recovery, relating to the NWIRP facility, among other claims. The parties, the Navy, the Air Force and Raytheon, stipulated that all cross claims asserted in that action would be dismissed with prejudice and without costs.
The Navy now alleges it preserved its claims against Raytheon because the Bedford Litigation did not include the Navy's CERCLA § 9607 claims for three reasons: 1) the Global Agreement in the Bedford Litigation reserves this Court's jurisdiction under the Site Y Agreement and the Navy-Raytheon Agreement (hereafter collectively referred to as the "Separate Agreements"); 2) the Global Agreement only relates to claims that arose in or before 1993 and 3) the Separate Agreements cite CERCLA § 9604, thus expressly reserving the Navy's § 9607 claims.
This Court recognizes that the Global Agreement reserves to this Court jurisdiction with respect to the Separate Agreements. Those agreements, however, have no bearing on this litigation. As defendant explains, Raytheon is not a party to the Site Y Agreement, this Court's continuing jurisdiction is limited to disputes with respect to the remedy selected by the Navy for Site Y and the Navy-Raytheon Agreement called for the dismissal of all claims with prejudice.
Furthermore, the Global Agreement does not limit the scope of the Bedford Litigation to claims discovered in or before 1993 because it is clear from the public documents that the Navy was aware of the contamination at issue, and the potential ongoing response costs, at the time of the prior suit.
Finally, nothing in the Separate Agreements reserves the Navy's § 9607 claims. Those agreements provide that:
[N]othing in this agreement shall be construed or applied to limit the Navy's authority to proceed with response action pursuant to section 104 of CERCLA.
The Navy cannot justifiably claim that the general reference to § 9604 preserves its § 9607 claims. Even if it did, § 9604 utilizes broad language to reference the executive's authority to bring civil settlement actions under § 9622, but because the proscription of a limitation on a broad claim does not amount to an express reservation of a specific claim, the Navy has not expressly preserved its § 9607 claims. See Epic Metals Corp. v. H.H. Robertson Co., 870 F.2d 1574, 1576-77 (Fed. Cir. 1989).
Thus, in accordance with the Cunan opinion, this Court finds that a final judgment on the merits was entered in the Bedford Litigation.
2. Sufficiently Identical Parties
To assert res judicata, "sufficient identity" must exist between the parties in the earlier and later suits. Cunan, 156 F.3d at 114. Raytheon and the Navy were parties to the Bedford Litigation and neither party disputes that fact. Therefore, this element is satisfied.
3. Sufficiently Identical Claims
To determine whether the original and later claims have "sufficient identity", this Court applies the "transactional approach", which extinguishes subsequent *525 claims with respect to all or any part of the "transaction, or series of connected transactions, out of which the action arose". Cunan, 156 F.3d at 114.
The Navy contends that the allegations in its 2017 complaint differ from the claims made in the Bedford Litigation. Knowledge of potential CERCLA claims, however, is sufficient to make a claim ripe for res judicata purposes. See Johnson v. SCA Disposal Services of New England, Inc., 931 F.2d 970, 976-77 (1st Cir. 1991). The Town in its 1989 complaint sought damages under CERCLA, injunctive relief under the Resource Conservation and Recovery Act and a declaratory judgment against the Navy and Raytheon, among other parties. It also claimed future damages and remediation of contamination allegedly migrating from NWIRP. Because the Navy had knowledge of potential CERCLA claims being adjudicated in the Bedford Litigation and initiated response actions in 1989 at the facility, it could have brought suit against Raytheon at that time. This pending suit invokes similar if not precisely the same CERCLA claims with respect to the same facility and the same contamination and thus defendant has shown that the claims are "sufficiently identical".
Because defendant has shown conclusively that the three elements of res judicata have been satisfied, its motion to dismiss will be allowed.
C. Additional Claims
Even though the Court's finding with respect to res judicata renders defendant's alternative argument moot, the Court proceeds to consider it in the interest of completeness.
1. Federal Facilities Agreement ("the FFA")
The defendant asserts that the Navy does not have a viable claim because CERCLA-related settlements bar § 9607 recovery costs and limits the Navy to an untimely contribution claim under § 9613 if that claim is commenced within three years of the purported settlement. The defendant's argument hinges on the finding that the FFA resolves the Navy's liability at the facility.
This Court is cognizant of the fact that the FFA cites § 9622 (which relates to settlements), that the Navy was also subject to stipulated EPA penalties with respect to any remediation action at the subject facility and that the EPA threatened to issue an order against the Navy pursuant to § 9606 if it failed to negotiate with the EPA in a timely manner. Section 9620 (e)(2) of CERCLA, however, requires an agency whose facility is on the National Priorities List to enter into an inter-agency agreement with the EPA for the "expeditious completion" of all "necessary remedial action" at a contaminated government facility. § 9620 (e)(2). The citation in the FFA to § 9620 (e)(2) and the conspicuous absence of an admission of liability in that agreement, insinuates an inference that the Navy entered into the FFA with the EPA as part of an interagency agreement, not to resolve a liability. Accordingly, the Navy has stated facts sufficient to infer that its § 9607 claims are not barred by the FFA. Defendant's motion to dismiss the government's claim on that ground will be denied.
2. Statute of Limitations for § 9607 Claims
Section 9613 of CERCLA provides for differing statutes of limitations for § 9607 claims depending upon whether the recovery relates to "removal" or "remedial" actions. Lawsuits related to removal actions must be commenced within three years after completion of the removal action. § 9613(g)(2)(A). Lawsuits related to remedial actions, on the other hand, need not be *526 commenced until six years after initiation of physical on-site construction of the remedial action, unless remedial actions have been initiated within three years after the completion of the removal action. § 9613(g)(2)(B).
The Navy alleges that the ROD denotes the end of the removal period and beginning of the remedial period. Because the Navy claims that the removal period ended concurrently with the start of the remedial period, the Navy asserts that it is entitled to the six-year statute of limitations under § 9613(g)(2)(B), which allows for recovery of both removal and remedial costs if the remedial actions are initiated within three years of the end of the removal period.
Raytheon responds that the Navy's pump-and-treat system, which was begun in 1995 and became operational in 1997, was remedial in nature because it treated 97 million gallons of contaminated groundwater and has been in continuous operation for the past 20 years. Accordingly, Raytheon asserts that the Navy was required, pursuant to § 9613(g)(2)(B), to bring its remedial action costs claim within six years of the initiation of the construction of the pump-and-treat system, i.e. in or before 2001.
The First Circuit Court of Appeals has not addressed the question of whether the ROD represents the end of the removal period but two other circuits have yielded conflicting opinions. The Ninth Circuit has adopted a holistic approach, holding that remedial action starts when the final remedial plan is adopted. California ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co., 358 F.3d 661, 666 (9th Cir. 2004). The Second Circuit, in contrast, has rejected that approach, holding that such approach affords the government "unlimited discretion" as to when the limitations period begins to run. Schaefer v. Town of Victor, 457 F.3d 188, 209 (2d Cir. 2006). This Court is persuaded by the latter approach and therefore adopts the reasoning in the Schaefer opinion. It finds that the issuance of the Navy's ROD does not definitively determine when removal action ends and remedial action begins.
This Court recognizes, that while another session of this Court has concluded that an ROD is relevant in determining whether an action is "removal" or "remedial" in nature, other factors, such as the conclusion of final monitoring or the evaluation or some other determination that no further action is necessary, are also relevant to determining when a removal period has ended. United States v. Boston & Maine Corp., No. CV 13-10087-IT, 2016 WL 5339573, at *15 (D. Mass 2016). Consistent with that opinion, this Court concludes that the finality and arbitrary nature of the Navy's ROD unfairly imputes to the government control of the statute of limitations.
The only question left for resolution is therefore whether the Navy's response action was "removal" or "remedial" in nature. That question, pursuant to § 9607, is one of law. New York v. Next Millenium Realty, LLC, 732 F.3d 117, 126 (2d Cir. 2013). In the Boston & Maine Corp. case cited above, Judge Talwani found that the primary thrust of removal actions is to remove hazardous substances that "pose a threat to public health and safety" while remedial actions focus primarily on the more permanent remedy of preventing the migration of released contaminants where there is no immediate threat to public health. United States v. Boston & Maine Corp., No. CV 13-10087-IT, 2016 WL 5339573, at *11 (D. Mass 2016). This Court agrees.
Raytheon has alleged sufficient facts for this Court to infer that the pump-and-treat system at NWIRP is remedial in *527 nature. For example, it asserts that 1) the Bedford water wells have been closed since 1984; 2) the plume was slow-moving because of the low permeability of the glacial till layers in the subject area; 3) the Navy's Short Term Measure Design Plan of Action/Work Plan noted that the objective of the pump-and-treat system was to contain the migration of contaminated groundwater and 4) the Final Five-Year Review for NWIRP noted that the pump-and-treat system was and continues to be effective in capturing and containing the solvent plume.
Accordingly, while this Court recognizes that there was some overlap between the alleged removal and remedial acts in question, there is sufficient evidence to suggest that the pump-and-treat system served primarily as a long-term, remedial action. Thus, the six-year statute of limitations on the remedial action applies from the time the pump-and-treat system was begun and the Navy's § 9607 claims are time barred as a matter of law. Defendant's motion to dismiss on statute of limitations grounds will be allowed.
ORDER
On res judicata and statute of limitation grounds (but not on the government's § 9607 claim under the Federal Facilities Agreement), the motion of defendant Raytheon to dismiss (Docket No. 10) is ALLOWED .
So ordered.